# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

AARICKA SWANSON, on behalf of herself and
all others similarly situated,

                         Plaintiff,

      v.

H&R BLOCK, INC., HRB TAX GROUP, INC.,
HRB DIGITAL, LLC, and FREE FILE, INC.

                         Defendants.

**CASE NO.   19-788**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Aaricka Swanson ("Plaintiff"), on behalf of herself and all others similarly situated, on personal knowledge as to the facts concerning herself, on information and belief as to all other matters, and based on the investigation of counsel and public statements, brings this class action against Defendants H&R Block, Inc., HRB Tax Group, Inc., HRB Digital, LLC (collectively "H&R Block"), and Free File, Inc. (collectively "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This action concerns H&R Block's campaign to intentionally divert and deceive lower-income taxpayers who are eligible to receive free tax preparation and filing services under the United States Internal Revenue Service's ("IRS") Free File program ("Free File Program") to their paid tax-filing products.

2. Pursuant to a contract agreement between Defendant Free File, Inc. (formerly known as Free File Alliance, LLC) and the IRS, H&R Block and other tax preparation providers are required to cumulatively offer 70% of U.S. taxpayers based on Adjusted Gross Income ("AGI") (currently anyone with an AGI of $66,000 or less) the option to file their taxes for free.

3. H&R Block and a consortium of other online tax-preparation providers formed the entity Free File, Inc., which purports to be "a nonprofit coalition of industry-leading tax software companies partnered with the IRS to provide free electronic tax services. The Alliance operates 'Free File' – a service dedicated to helping 70 percent of American taxpayers prepare and e-file their federal tax returns."[1]

4. Free File, Inc. acted as H&R Block's agent in entering into the "Free Online Electronic Tax Filing Agreement" (the "Free File Agreement") on its behalf, as well as the subsequent agreements and Memorandums of Understanding. Indeed, the Free File Agreement explicitly states: "To accomplish the [objective of allowing lower income taxpayers to file for free], the IRS and the Consortium (together, "the Parties") will work together to offer free, on-line tax return preparation and filing services to taxpayers ("Free Services"). The Consortium

---

[1] https://freefilealliance.org/about/ (last visited 9/23/19).

will offer Free Services to taxpayers."[2]  As such, each member of Free File, Inc., including H&R Block, agreed to offer free online tax-filing services to lower income taxpayers.

5.     The agreement was specifically designed so that the IRS would not need to create its own free online filing system.  According to the government, the goal of the Free File Program was to implement the IRS's public policy of "extending the benefits of online federal tax preparation and electronic filing to economically disadvantaged and underserved populations at no cost to either the individual user or to the public treasury."

6.     H&R Block, however, has been luring customers into paying for a service that it promised the government and consumers it would give away for free.

7.     With knowledge that a large number of its users (a portion of the lowest earning 70% percent of American taxpayers) qualify to file their taxes online for free, H&R Block violated its agreement with the IRS and defrauded Plaintiff and members of the Nationwide Class and California Subclass (defined below) by actively concealing public access to the IRS's Free File Program and intentionally diverting qualified taxpayers away from its free filing program in favor of its paid product offerings.

8.     H&R Block has employed deceptive and misleading advertising to fraudulently induce lower-income taxpayers into purchasing their paid products when they were eligible for free services pursuant to H&R Block's agreement with the IRS.  Indeed, H&R Block marketed one of its offerings under the product name, "Free Online"—so that many qualified taxpayers believed they were filing their taxes pursuant to the Free File Program, only to be hit with unexpected charges after they already spent hours entering information and preparing to file. Additionally, H&R Block actively undermined public access to the IRS Free File Program.

9.     After luring lower-income consumers to begin preparing their returns with the "Free Online" software (which is not actually free for most taxpayers), H&R Block then manipulates consumers into paying for product upgrades and upsells.

---

[2] https://www.irs.gov/pub/irs-utl/2002-free-online-electronic-tax-filing-agreement.pdf (last visited 9/23/19).

10. Indeed, as reported by ProPublica, "H&R Block explicitly instructs its customer service staff to push people away from its free offering."[3] H&R Block issued written guidance to its customer service staff instructing them to divert consumers to its paid offerings and away from its Free File software wherever possible: "Do not send clients to th[e Free File Program website] unless they are specifically calling about the Free File program . . . We want to send users to our paid products before the free product, if at all possible."[4]

11. Because H&R Block's actions and omissions violate well established legal and statutory duties that they owed to Plaintiff and all other similarly situated consumers, those individuals were forced to suffer the consequences. As a result of H&R Block's conduct, it generated millions of dollars of ill-gotten gains from persons who can least afford it.

12. Plaintiff brings this class action on behalf of herself and all similarly situated consumers for actual and statutory damages, as well as punitive damages and equitable relief, including a public injunction, to fully redress the harm H&R Block's wrongful acts have unleashed on consumers.

## PARTIES

13. Plaintiff Aaricka Swanson is a resident of Bakersfield, California, and is a citizen of the state of California who paid to use H&R Block's online tax-filing software to file her tax returns, despite qualifying for the IRS Free File Program. In or around March 2, 2019, Ms. Swanson navigated to H&R Block's main website to file her 2018 federal and state tax returns. However, after she inputted her information into the software, Ms. Swanson was charged $64.94 to file her taxes through H&R Block's online software. Specifically, she was charged for a "federal return" in the amount of $29.99 and for a "Refund Transfer Fee" in the amount of $34.95. However, her filings should have been completely free pursuant to the Free File Program because her adjusted gross income was under $66,000. Had H&R Block not misrepresented the nature of its tax preparation and e-filing services and informed Plaintiff

---

[3] Justin Elliott and Paul Kiel, *TurboTax and H&R Block Saw Free Tax Filing as a Threat – and Gutted It*, ProPublica, https://www.propublica.org/article/intuit-turbotax-h-r-block-gutted-free-tax-filing-internal-memo (last visited 8/29/19).

[4] *Id.*

Swanson of the existence of and her eligibility to use the Free File software, she would not have agreed to purchase H&R Block's software. Plaintiff's belief that her only option was to use the paid software was a substantial factor in her decision to purchase the H&R Block software. Had H&R Block made its free tax filing product accessible, Plaintiff would have used it, rather than the paid version.

14.     Defendant H&R Block, Inc. is a Missouri corporation with its principal place of business in Kansas City, Missouri. Defendant HRB Digital LLC, a subsidiary of H&R Block, Inc., is a Delaware limited liability company with its principal place of business in Kansas City, Missouri. H&R Block, Inc. and HRB Digital LLC collectively own and control a series of 24 widely used electronic tax preparation and filing software products and services, including those offered through https://www.hrblock.com/. H&R Block, Inc. is a member of Defendant Free File, Inc., a nonprofit coalition of 12 tax software companies under an agreement with the IRS to provide free electronic tax services to eligible American taxpayers. H&R Block, Inc. and its subsidiaries collectively operate under the brand name "H&R Block."

15.     Defendant HRB Tax Group, Inc. is a company existing under the laws of the State of Missouri, having its principal place of business at One H&R Block Way, Kansas City, Missouri 64105. Defendant HRB Tax Group, Inc. "offers tax filing, audit, and e-fil[]ing services."[5] Upon information and belief, HRB Tax Group, Inc. is a subsidiary of H&R Block, Inc., and is responsible for overseeing and implementing H&R Block's online tax filing products.

16.     Defendant HRB Digital, LLC, also a subsidiary of H&R Block, Inc., is a Delaware limited liability company with its principal place of business in Kansas City, Missouri. Defendant HRB Digital, LLC owns and controls a series of widely used electronic tax preparation and filing software products and services, including those offered through https://www.hrblock.com/.

---

[5] https://www.bloomberg.com/profile/company/1354488D:US (last visited 8/29/19).

5

17.     Defendant Free File, Inc. ("FFI") is a Virginia corporation with its principal place of business in Clifton, VA.  FFI is a nonprofit coalition of 12 tax software companies under agreement with the IRS to provide free electronic tax services to certain American taxpayers. H&R Block has been a member of FFI since its inception in 2002.

18.     With respect to the allegations herein, each of the Defendants was each other's agent and, in doing the things herein alleged, was acting within the scope and course of its authority as such agent.

19.     H&R Block and its various other subsidiaries collectively own and control a series of widely used electronic tax preparation and filing software products and services, including those offered through https://www.hrblock.com/.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed class; (b) some members of the proposed class have a different citizenship from Defendants; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

21.     Venue is proper in this Court under 28 U.S.C. § 1391 because H&R Block, Inc., HRB Tax Group, Inc. and HRB Digital LLC are residents of this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

22.     H&R Block is among the leaders in the online tax preparation software industry.

**A.  H&R Block Agrees to Participate in the IRS's Free File Program**

23.     On October 30, 2002, Defendant FFI entered into the Free File Agreement on behalf of H&R Block and a group of electronic tax filing companies.  The purpose of the Free File Agreement was to provide free electronic tax return preparation and filing for qualified lower-income and economically disadvantaged taxpayers, who were the least likely to be able to afford electronic tax filings for their returns.

6

24.     FFI was the agent of H&R Block for purposes of binding them to the Free File Agreement.  H&R Block conferred upon FFI express, implied, and apparent authority to bind them to the Free File Agreement.

25.     The benefits of the Free File Agreement served objectives of all parties.  It served the IRS's objective of giving low-income taxpayers a way of being able to afford electronic tax filings, as well as shifting the American public toward e-filing as a whole as opposed to paper filing.  It also helped H&R Block and the other 11 tax preparation providers' goal of not having to compete with a government run e-file tax service, as the agreement specifically prevents the federal government from entering into the electronic tax preparation software marketplace.

26.     This commitment from the government protects the viability of the commercial tax preparers' business model by ensuring they can always charge a significant portion of the U.S. population fees for their services.

27.     Lower-income taxpayers are third-party beneficiaries of the Free File Agreement. Indeed, the Free File Agreement explicitly states that its purpose is to benefit third-party taxpayers by offering a free, straightforward filing service for those who meet the income requirements:

> This Agreement provides for free on-line tax return preparation and filing to individual taxpayers, thereby meeting the following five objectives:
>
> 1. *Assuring access to a free and secure electronic preparation and filing option for additional taxpayers*, building upon free electronic tax preparation and filing provided in the commercial market today;
>
> 2. *Making tax return preparation and filing easier and reducing the burden on individual taxpayers*;
>
> 3. Supporting the IRS's statutory goals of increased e-filing, pursuant to the IRS Restructuring and Reform Act of 1998, which encouraged the IRS to set a goal of having 80% of Federal tax and information returns filed electronically by the year 2007;
>
> 4. *Providing greater service and access to taxpayers*; and

7

5. Implementing one of the proposals in the President's FY'03 budget, specifically to encourage further growth in electronic filing by providing taxpayers the option to file their tax return on-on- line without charge, using cooperation with, and encouraging competition within, the private sector to increase e-filing.[6]

28.     Under the Free File Agreement, H&R Block and others agreed to coordinate with the IRS and the other providers to ensure that "their respective marketing of these Free Services … provide[s] uniformity" and "maximize[s] public awareness."  In 2002, the IRS wrote in the Federal Register: the Free File Agreement "provides that taxpayers will not have to go through additional steps or barriers to access the Free Service, beyond those steps required or imposed to access the comparable paid service."  The IRS also instructed that the Free File Program was to offer products "equivalent to those offered for sale on the commercial market," providing "all of the features and operability of those commercial products."

29.     Each member of the Free File Alliance agreed that "[n]o marketing, soliciting, sales or selling activity, or electronic links to such activity, are permitted in the Free File Program," except for state tax returns or where the user proves to be ineligible for the Free File product.

30.     Over the sixteen years that H&R Block has participated in the Free File Program, the Free File Agreement was extended eight times in documents known as "Memorandums of Understanding" or ("MOU").  The Eighth MOU is currently in effect and is extended until October 31, 2021.

31.     Article 2 of both the Seventh and Eighth MOUs states that Free File members "shall … [m]ake tax return preparation and filing easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations," and shall also "[p]rovide greater service and access to the [Free File] Services to taxpayers."

_____
[6] https://www.irs.gov/pub/irs-utl/2002-free-online-electronic-tax-filing-agreement.pdf (last visited 9/23/19).

32. The Eighth MOU added that "Members shall not include a 'value added' button (i.e., an icon, link or any functionality that provides a taxpayer with access to a Member's commercial products or services) on the Member's Free File Landing Page." The Seventh MOU expressly provided that "[t]he Member shall have a prominent link permitting taxpayers on a Member's Paid Service Offering Page to easily and clearly return to the Member Free File Landing Page."

33. The Seventh and Eighth MOUs also prohibit "requesting or collecting bank/financial information (e.g., debit/credit card information) from customers who qualify for a free return where no state tax return products have been purchased."

34. In addition, the Eighth MOU sets forth specific rules to ensure that consumers who do not qualify for a particular member's Free File product are first redirected to other members' Free File products, for which they might be eligible, before being offered a member's paid products.

35. The IRS Free-Filing Agreement and MOUs provide that Free File members must collectively offer 70% of U.S. taxpayers – or approximately 100 million people – the option to file their taxes for free. For the 2018 tax season, any taxpayer whose adjusted gross income is $66,000 or less is eligible to use tax preparation software from one of these providers to prepare and file tax forms for free, although each provider sets its own eligibility requirements.

36. For H&R Block, a taxpayer is eligible to use its Free File software if he or she (i) has an AGI of $66,000 or less and is between the ages of 17 and 51, (ii) is eligible for the Earned Income Tax Credit, or (iii) is on active military duty and has an AGI of $66,000 or less.

37. While 70% of U.S. taxpayers are eligible to file for free, less than 2.5% of eligible taxpayers actually utilize the program. The reason for this disparity is due in large part to H&R Block's deceptive practices to prevent lower-income taxpayers from utilizing the program in favor of its paid product offerings.

9

**B. H&R Block's Deceptive Practices and Misrepresentations**

38.　Although the Free File Program eliminated the threat that the government would launch its own free tax filing program, it also threatened to reduce H&R Block's profits by reducing the percentage of customers who purchased its paid products.

39.　H&R Block instituted a scheme to ensure that eligible taxpayers would pay for H&R Block's tax services. Specifically, H&R Block set up two programs with similar and misleading names: the "Free File" program and "Free Online" program.

40.　H&R Block's "Free File" program is H&R Block's actual free product.

41.　H&R Block's "Free Online" program has nothing to do with the IRS Free File program. It is a very basic software which can only be used for very basic tax returns. For example, taxpayers classified as independent contractors and anyone who owns a home, has a health savings account, owns rental property, has investments, or owns a business (regardless of size) cannot complete a tax return with the "Free Online" software.

42.　Further, the H&R Block "Free Online" program charges users $29.99 for each state tax return filed. However, taxpayers who meet the income eligibility thresholds for H&R Block "Free File" can file a state tax return for free through that product.

43.　Although H&R Block offers a Free File product, few consumers actually learn about it.

44.　As described above, H&R Block has a policy of directing consumers to paid offerings wherever possible. ProPublica published a portion of H&R Block's internal guidance to direct consumers away from its free offering where possible[7]:



---

[7] Justin Elliott and Paul Kiel, *TurboTax and H&R Block Saw Free Tax Filing as a Threat – and Gutted It*, ProPublica, https://www.propublica.org/article/intuit-turbotax-h-r-block-gutted-free-tax-filing-internal-memo (last visited 8/29/19).

45.     At all times relevant to this litigation, H&R Block's "Free File" program was neither conspicuously referenced nor linked to anywhere on H&R Block's main website.  In fact, H&R Block's Free File software had to be accessed through an entirely separate website.  By contrast, H&R Block's other online tax-filing products can be found on its main website.  Given that a Google search for "H&R Block" or "H&R Block Free" would lead to H&R Block's main website, consumers eligible to use the Free File software are unlikely to discover it.

46.     What is more, during the 2018 tax season, H&R Block deliberately hid its Free File website from consumers by adding a line of code (a noindex robots meta tag[8]) to the website that prevented it from appearing in any online search results. [9]

47.     After ProPublica exposed H&R Block's hiding of its Free File website in an article published on April 26, 2019, H&R Block changed the code on its Free File website so that it is no longer hidden from Google or other search engines.

48.     Upon information and belief, H&R Block advertised and continues to advertise its main website by purchasing Google Search Ads (which display at the top of Google search results when triggered by the advertiser's pre-selected keywords).  When ProPublica reporters typed into the Google search bar the phrase "irs free file taxes," it returned a paid ad for H&R Block which advertised "Free Federal Tax Filing."[10]

---

[8] https://support.google.com/webmasters/answer/93710?hl=en (last visited 9/2/19) (Google explains that "[y]ou can prevent a page from appearing in Google Search by including a `noindex` meta tag in the page's HTML code, or by returning a 'noindex' header in the HTTP request.")

[9] Justin Elliott, *TurboTax Deliberately Hid Its Free File Page From Search Engines*, ProPublica, https://www.propublica.org/article/turbotax-deliberately-hides-its-free-file-page-from-search-engines (last visited 9/2/19) (explaining that "H&R Block . . . hid its H&R Block Free File product from Google using . . . code").

[10] Justin Elliott and Lucas Waldron, *Here's How TurboTax Just Tricked You Into Paying to File Your Taxes*, ProPublica, https://www.propublica.org/article/turbotax-just-tricked-you-into-paying-to-file-your-taxes (last visited 9/2/19).



49.     However, the H&R Block main website did not link to the Free File software.

50.     As such, H&R Block simultaneously suppressed the Free File software while actively advertising its paid products, advertising them as "Free."  This practice deceived Plaintiff, members of the Nationwide Class and California Subclass (defined below), and members of the public.

51.     H&R Block further misled reasonable consumers into believing that if they are unable to complete their tax returns using H&R Block's "Free Online" due to its highly limited functionality, their only recourse is to upgrade to one of H&R Block's paid products that supports the tax forms they need to complete their returns, even if they are eligible to file under the Free File Program.

52.     Further, if a user types into Google "h&r block," the user is directed to H&R Block's main website.  If the user clicks the first link to the main website, the page provides ways to file the user's tax returns and provides three options: the "Free Online" software which

indicates "$0," a "Deluxe Online" program for $49.00, and an in-office/drop-off option starting at $59.[11]  There is no discernable link on the page to the Free File software.

53.     If the consumer selects H&R Block "Free Online" (advertised as $0), he or she is prompted to create an account and then is asked a series of questions regarding personal tax information.  If the information inputted is unsupported by the limited Free Online functionality, the consumer is then told that he or she needs to upgrade to the premium product to complete his or her taxes, even if that consumer is eligible to use the Free File software.  There is no reference made to the Free File option, nor does the program direct eligible participants to file for free.

54.     If consumers begin filling out their tax information in either H&R Block "Free Online" or another one of its paid products, there is no way to transfer that information should they become aware that they will be charged, or become aware of the Free File software by some other means.  Instead, the user must sign out of the account entirely, go to the H&R Block Free File website (which cannot be directly navigated to from H&R Block's main website), sign in again, and re-enter their information into the new program.

**C. Public Injunctive Relief Is Warranted To Protect The Public From Future Harm**

55.     H&R Block's practices, as described above, underscore the need for injunctive relief to ensure that H&R Block halts the practices described herein and does not return to these practices in the future.

56.     The foregoing makes clear H&R Block's intent to continue (1) operating and aggressively marketing their paid software under the guise of "Free" through, among other channels, paid search advertising and search engine optimization programs, (2) hiding the availability of H&R Block's Free File software through depressing search engine rankings and failing to include a prominent and intuitive link to their Free File service on their main website (as H&R Block does for its paid programs), (3) using deceptive advertising, particularly the word

---

[11] *See* https://www.hrblock.com/lp/choose-block/?otppartnerid=9007&campaignid=ps_mcm_9007_0176&omnisource=GGL|CAMPGM-B-G-S-EN-EXM-ALL_Core-TP|ADGPGM-B-G-S-EN-EXM-ALL_Core-TP-_-H%2BR+Block|KWRDH%26r%20block&KeywordID=195953&gclid=EAIaIQobChMI87j674Gz5AIViZ-fCh1eNwI4EAAYASAAEgKBw_D_BwE (last visited 9/2/19).

"free" as associated with programs that will, in most cases, require an upgrade to a paid software product, (4) failing to clearly differentiate between the "Free Online" software and the Free File software such that consumers are not confused, (5) failing to inform eligible taxpayers of the Free File Program when information inputted into the software demonstrates eligibility, (6) prompting users to enter payment information when they are otherwise eligible for the Free File Program, (7) failing to provide a convenient means for eligible consumers to transplant their information from H&R Block's Free Online and other paid software to the Free File software where eligible.

57.    To protect the general public from the threat of future injury, Plaintiffs seek a public injunction, under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), prohibiting H&R Block from continuing its deceptive and unfair practices.

58.    To stop H&R Block's deceptive, unfair, and unlawful conduct, H&R Block should be prohibited from continuing to hide and impede access to its Free File software. The Free File software should be prominently displayed and juxtaposed against H&R Block's other offerings, to wit the "Free Online" and other paid offerings. H&R Block should be required to clearly set forth the requirements for use of the Free File software, clearly differentiate it from the Free Online software, and ensure that consumers who are eligible to use the Free File software are given clear and easy access to the same. The Free File software should be clearly displayed on H&R Block's main website. A taxpayer that begins using the Free Online software or other paid software should have the opportunity to easily and conveniently transfer his or her information to the Free File software.

59.    In addition, H&R Block should be prohibited from engaging in practices designed to lower the prominence and ranking of its Free File software in search results. In particular, H&R Block should be prohibited from interfering with any search engine robot crawling or indexing that would tend to increase the ranking of the webpages for its Free File software. And H&R Block should be prohibited from using search advertisements and search engine optimization techniques to promote the ranking of any competing "Free" Service to the prejudice of its Free File software.

60.     Absent injunctive relief, Plaintiff and the public at large face informational uncertainty regarding H&R Block's services and are likely to be misled or confused again by H&R Block's practices. H&R Block can easily change the name of its Free File software and/or its competing "Free Online" program (and the terms H&R Block uses to describe and market those services), H&R Block can also change the conditions of and/or landing page for their Free File software or any competing "Free" Service, and H&R Block can deploy search engine optimization strategies to divert taxpayers away from its Free File software and the IRS Free File Program and toward a competing "Free" service, such that Plaintiff and other members of the public will not be sure (a) whether they are actually proceeding with H&R Block's Free File software or some other service, (b) whether H&R Block provides more than one free service and which one they are in, and/or (c) whether they are actually eligible to use H&R Block's Free File software or some other service. Absent injunctive relief, Plaintiff and Nationwide Class and California Subclass members will either (a) forgo using truly free services offered by H&R Block, even though Plaintiff and members of the public may be eligible and would like to use such free services, because of uncertainty as to whether they will be charged at the end of the process or (b) will again attempt to use a competing "Free" service that ultimately pushes them into H&R Block's paid software products. Absent injunctive relief, H&R Block could also continue to market their paid software products and manipulate consumers into paying for H&R Block's unnecessary services.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings her claims on behalf of a proposed Nationwide Class and California Subclass (collectively, the "Class"), defined as follows:

> All Free File Program-eligible persons in the United States who paid to use an H&R Block product to file an online tax return for the 2002 through 2018 tax filing years (the "Nationwide Class").

> All Free File Program-eligible persons in the State of California who paid to use an H&R Block product to file an online tax return for the 2002 through 2018 tax filing years (the "California Subclass") (collectively, the "Classes").

62.     Plaintiff represents, and is a member of, the proposed Nationwide Class and California Subclass.  Excluded from the Nationwide Class and California Subclass are: Defendants; any of their corporate affiliates; any of their directors, officers, or employees; any persons who timely elects to be excluded from the Classes; any government entities; and any judge to whom this case is assigned and their immediate family and court staff.

63.     Plaintiff does not know the exact number of members in the Classes, but believes that there are at least tens of thousands of members.  The members of the Classes are so numerous that joinder of all members of the Class would be impracticable.  The names and addresses of members of the Classes are identifiable through documents maintained by Defendants.

64.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members include:

      (a)  Whether H&R Block knowingly failed to comply with, and/or breached its obligations under the Free File Program;

      (b)  Whether H&R Block's website and/or advertising of the Free Online software is false and misleading to reasonable consumers;

      (c)  Whether H&R Block engaged in other improper conduct in furtherance of its misrepresentations, including manipulation of software source code and online ad placements to impede low-income taxpayers' ability to discover and navigate to its free filing website;

      (d)  Whether H&R Block violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*;

      (e)  Whether H&R Block violated the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*;

      (f)  Whether H&R Block violated the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.;

(g) Whether a public injunction is appropriate to stop H&R Block's conduct of promoting deceptively named "free" services that result in an upcharge to most users while simultaneously suppressing taxpayer access to their Free File software;

(h) Whether Plaintiff and members of the Classes suffered injury, including ascertainable losses, as a result of H&R Block's false and misleading advertising, and unlawful, unfair, fraudulent or deceptive acts or practices;

(i) Whether Plaintiff is a third-party beneficiary to the IRS Free-Filing Agreement;

(j) Whether H&R Block breached its obligations under the IRS Free-Filing Agreement;

(k) Whether Plaintiff and members of the Classes are entitled to actual damages, statutory damages, restitution, equitable, injunctive or other relief as warranted; and

(l) Whether H&R Block should be enjoined from continuing to perpetrate its scheme herein.

65.     Plaintiff reserves the right to propose additional or alternative classes or subclasses, or to narrow the above class definition. This reservation includes but is not limited to classes or subclasses involving consumers in multiple states or involving particular issues.

66.     Plaintiff's claims are typical of the claims of the members of the Classes, and Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff and all members of the Classes are identically affected by Defendants' wrongful conduct.

67.     Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.

68.     Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.

69.     Plaintiff is represented by counsel competent and experienced in complex consumer class action litigation.

70.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

71.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense of numerous individual actions.  The benefits of proceeding as a class, including providing injured persons with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any potential difficulties in managing this class action.

72.     The prosecution of separate actions by individual members of the Classes is not feasible and would create a risk of inconsistent or varying adjudications.

## CAUSES OF ACTION

### FIRST COUNT
**Violations of the California Consumers Legal Remedies Act**
**(Cal. Civ. Code § 1750, et seq.)**
**(On behalf of Plaintiff and the California Subclass against H&R Block)**
**(Injunctive Relief Only)**

73.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

74.     Plaintiff brings this count on behalf of herself and the members of the California Subclass.

75.     California's Consumers Legal Remedies Act ("CLRA"), Cal Civ. Code §1750, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).

76.     H&R Block is a "person" within the meaning of California Civil Code sections 1761(c) and 1770 and provided "services" within the meaning of sections 1761(b) and 1770.

77.     H&R Block's acts and practices, as alleged in this complaint, violate the CLRA

because they include unfair and deceptive acts and practices in connection with transactions (the sale of tax preparation and filing services). In violation of California Civil Code section 1770(a)(9), H&R Block advertised its tax preparation and filing services with intent not to sell them as advertised.

78. A reasonable consumer would attach importance to H&R Block's misrepresentations alleged herein and would be induced to act on the information in making purchase decisions.

79. H&R Block engaged in the acts and practices alleged herein with the intent to induce consumers to purchase H&R Block tax preparation and filing services. H&R Block knew that its choice of names and marketing of the Free Online software was confusing to customers, fraudulently misrepresented or omitted the differences between its Free File software, the Free Online software, and its paid products, and failed to disclose and actively concealed those differences. H&R Block also actively concealed from Plaintiff and California Subclass members the availability of the Free File software by suppressing results in search engines and failing to provide a link to the Free File software on H&R Block's main website. Had Plaintiff and members of the California Subclass been able to reasonably access the Free File software, they would have done so and would not have paid to use H&R Block's paid software.

80. H&R Block's acts and practices did in fact result in the sale of H&R Block tax preparation and filing services to Plaintiff and members of the California Subclass, thereby causing them harm.

81. H&R Block knew or should have known that its conduct violated the CLRA.

82. H&R Block owed Plaintiff and members of the California Subclass a duty to disclose the true costs associated with the H&R Block Free Online software, as well as the existence, availability, and functionality of H&R Block's Free File software, because H&R Block (1) had exclusive and/or far superior knowledge and access to the facts regarding the Free File Program, and their Free Online and Free File software, than Plaintiff and members of the California Subclass; (2) knew the facts regarding their various products that were not known to or reasonably discoverable by Plaintiff and members of the California Subclass; (3) intentionally

concealed the Free File software from Plaintiff and members of the California Subclass; and (4) made incomplete or fraudulent representations about the cost of their services, while purposefully withholding material facts regarding the eligibility of Plaintiff and members of the California Subclass for truly free filing.

83.     As a direct and proximate result of H&R Block's violations of the CLRA, the members of the California Subclass have suffered injury-in-fact and/or actual damage.

84.     Plaintiff requests that this Court enjoin H&R Block from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If H&R Block is not restrained from engaging in these types of practices in the future, Plaintiff, members of the California Subclass, and the general public will continue to suffer harm.

85.     Plaintiff and members of the California Subclass seek injunctive relief under the CLRA.

86.     On September 17, 2019, prior to the filing of this Complaint, Plaintiff sent H&R Block a notice letter that complies in all respects with California Civil Code §1782(a).  Plaintiff's counsel sent H&R Block the letter via certified mail, return receipt requested, advising H&R Block that it is in violation of the CLRA and demanding that H&R Block cease and desist from such violations and make full restitution by refunding the monies received therefrom.  If H&R Block fail to do so, Plaintiff will amend this Complaint to seek compensatory and actual damages to which Plaintiff and members of the California Subclass are entitled.  A true and correct copy of Plaintiff's CLRA letter is attached hereto as **Exhibit A**.

87.     In accordance with California Civil Code § 1780(d), a venue affidavit signed by Plaintiff is attached as **Exhibit B**.

**SECOND COUNT**
**Violations of the California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §17200, et seq.)**
**(On behalf of Plaintiff and the California Subclass against H&R Block)**

88.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

89. Plaintiff brings this count on behalf of herself and the members of the California Subclass.

90. California's Unfair Competition Law ("UCL"), California Business and Professions Code §17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

91. H&R Block is a person under Cal. Bus. & Prof. Code § 17201.

92. In the course of their business, H&R Block violated the UCL by engaging in unlawful, fraudulent, and unfair and deceptive business acts and practices. H&R Block violated each prong of the UCL.

93. Specifically, H&R Block violated the fraudulent prong of the UCL by, inter alia, knowingly and intentionally misrepresenting and concealing from consumers that H&R Block Free Online is not a Free File Program-compliant product, offers limited functionality, and requires consumers to upgrade to costly paid products for anything other than the most basic tax returns. H&R Block also violated the fraudulent prong of the UCL by fraudulently misrepresenting, omitting, and concealing the existence, functionality, and applicability of its Free File software.

94. H&R Block violated the unlawful prong of the UCL by violating California statutory and common law prohibiting false advertising, unfair and deceptive trade practices, fraud and fraudulent concealment, including, *inter alia*, the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. and the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.

95. H&R Block violated the unfair prong of the UCL because the acts and conduct alleged herein offend established public policy, and are immoral, unethical, unscrupulous, or substantially injurious, and the harm H&R Block caused to consumers greatly outweighs any benefits associated with its practices.

96. In addition, H&R Block violated the UCL by, *inter alia*, hiding its Free File product from the public, inserting code that would prevent the Free File product from appearing in online search results so that, if taxpayers looking to use H&R Block's Free File software tried

21

to use a search engine to find it, they would be directed to the Free Online software and H&R Block's other paid products, and not the free service that they sought, and not providing a link from its website to access the Free File software. This conduct was taken by H&R Block to artificially inflate profits and deprive low-income consumers of a free product.

97.     H&R Block further violated the UCL by marketing H&R Block's functionally-limited Free Online software as "free," while concealing the existence, availability, and functionality of its Free File software and marketing paid products to consumers when they were unable to prepare their taxes for free due to the limited functionality of Free Online software. H&R Block marketed Free Online with the intent to confuse consumers with regard to the Free File product.

98.     H&R Block fraudulently misrepresented that paid products were required when its Free File software could have been used to prepare and file taxes for free, and only informed customers of the need to purchase paid products after they went through the time-consuming process of entering personal information into the Free Online edition. Once this occurred, there was no easy way to transfer that information to the Free File edition of the software.

99.     H&R Block's fraudulent scheme, material omissions and concealment of the true characteristics of H&R Block's "Free Online" software and the existence, availability, and functionality of H&R Block's Free File software were material to Plaintiff and the California Subclass. H&R Block fraudulently misrepresented, concealed, and/or failed to disclose the truth regarding the Free Online and Free File edition with the intent that Plaintiff and members of the California Subclass would rely on the misrepresentations, concealments, and omissions. Plaintiff, members of the California Subclass, and members of the general public did, in fact, rely on the aforementioned misrepresentations made by H&R Block.

100.    H&R Block's acts and omissions are likely to deceive and mislead the general public.

101.    Had they known the truth, Plaintiff and members of the California Subclass would have used the Free File edition to prepare and file their taxes for free (as H&R Block promised

the IRS), would not have used Free Online or any other paid product, and/or would not have been fraudulently induced to pay H&R Block for use of its paid products.

102. The aforementioned practices, which H&R Block has used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over H&R Block's competitors as well as injury to the general public.

103. Plaintiff, members of the California Subclass and members of the public suffered ascertainable loss and actual damages as a direct and proximate result of H&R Block's fraudulent misrepresentations, omissions, concealment of and failure to disclose material information, and violations of California common and statutory law, including, *inter alia*, all monies paid to H&R Block for tax preparation and filing.

104. H&R Block acted knowingly, intentionally, and/or with reckless disregard for the rights of Plaintiff and California Subclass members. H&R Block's fraudulent, unfair, and unlawful conduct continues to this day.

105. Plaintiff and members of the California Subclass seek declaratory, injunctive, and equitable relief, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the UCL.

106. Plaintiff seeks, on behalf of herself, the members of the California Subclass, and the general public, an injunction to prohibit H&R Block from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by H&R Block, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that H&R Block will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future taxpayers to repeatedly and continuously seek legal redress in order to recover monies paid to H&R Block to which they are not entitled. Plaintiff, the members of the California Subclass, and members of the general public have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## THIRD COUNT
### Violations of the California False Advertising Law
### (Cal. Bus. & Prof. Code § 17500, et seq.)
### (On behalf of Plaintiff and the California Subclass against H&R Block)

107.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

108.    Plaintiff brings this count on behalf of herself and the members of the California Subclass.

109.    Cal. Bus. & Prof. Code §17500 (the "FAL") states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

110.    H&R Block caused to be made or disseminated through California, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to H&R Block, to be untrue and misleading to consumers, including Plaintiff and members of the California Subclass.

111.    H&R Block violated the FAL because the misrepresentations and omissions regarding the true cost of H&R Block's Free Online, as well as the existence, availability, and functionality of H&R Block's Free File software, were material to Plaintiff and members of the California Subclass, were likely to deceive a reasonable consumer, and deceived Plaintiff and members of the California Subclass.

112.    Plaintiff, members of the California Subclass, and members of the general public relied to their detriment on H&R Block's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiff, members of the California Subclass, and members of the general public been

adequately informed and not intentionally deceived by H&R Block, they would have acted differently by, without limitation, refraining from using H&R Block's Free Online and other paid software.

113.    H&R Block's acts and omissions are likely to deceive the general public.

114.    As a direct and proximate result of H&R Block's untrue and misleading advertisements, Plaintiff and members of the California Subclass have suffered an injury in fact, including the loss of money or property.  In using H&R Block's paid products, Plaintiff and members of the California Subclass relied on H&R Block's untrue and misleading advertisements with respect to the true costs associated with H&R Block's Free Online software, as well as the existence, availability, and functionality of the Free File software.  Had Plaintiff and members of the California Subclass known they could use the Free File software to prepare and file simple to complicated tax returns for free, they would not have paid for H&R Block's paid products.  Accordingly, Plaintiff and members of the California Subclass overpaid for H&R Block's services and did not receive the benefit of the Free File Program.

115.    The wrongful conduct alleged herein occurred, and continues to occur, in the conduct of H&R Block's business.  H&R Block's wrongful conduct is part of a course of conduct that is still perpetuated and repeated in the State of California.

116.    Plaintiff and members of the California Subclass seek injunctive relief, restitution, and such other relief as is available under the FAL.

117.    Plaintiff seeks, on behalf of herself, the members of the California Subclass, and the general public, an injunction to prohibit H&R Block from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by H&R Block, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that H&R Block will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future taxpayers to repeatedly and continuously seek legal redress in order to recover monies paid to H&R Block to which they are not entitled. Plaintiff, the members of the California Subclass, and other members

of the general public have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## FOURTH COUNT
### Breach of Contract
**(On Behalf of Plaintiff and the Nationwide Class against Defendants)**

118.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

119.    Plaintiff brings this claim on behalf of herself and the members of the Nationwide Class and California Subclass.

120.    The IRS Free File Agreement is a contractual agreement between the IRS and FFI.  FFI acted as an agent on behalf of H&R Block in executing the Free File Agreement.

121.    The IRS Free File Agreement was entered into for the express benefit of low-income taxpayers.

122.    As such, Plaintiff and members of the Classes are third-party beneficiaries to the IRS Free File Agreement.

123.    Defendants breached its agreement with the IRS and its duties and obligations to Plaintiffs and members of the Nationwide Class and California Subclass as third-party beneficiaries by:

   a. Failing to comply with Section 2.1, which requires Defendants to "[m]ake tax return preparation easier and reduce the burden on individual taxpayers, particularly the economically disadvantaged and underserved populations;"

   b. Failing to comply with Section 2.3, which requires Defendants to "[p]rovide greater service and access to the Services to taxpayers," with "Services" being defined in Section 1.13 as "free, online tax return preparation and Filing of Federal individual income tax returns;"

   c. Failing to comply with Section 4.15.14 of the Agreement, which requires Defendants to "clearly list [its] free customer service options;" and

26

d.  Failing to comply with Section 4.19.2 of the Agreement, which requires
    Defendants to "unequivocally inform taxpayers who are ineligible for the free
    offer at the earliest feasible point" and that the "taxpayer shall be directed back to
    the IRS Free File Landing Page as the first and most prominent alternative action
    so that they may immediately consider other Free File offers available from the
    Free File Program."

124.   Plaintiff and members of the Nationwide Class and California Subclass have been
damaged by Defendants' breach of their contractual obligations because they qualified for free
filing under the IRS Free File Agreement but were required by H&R Block to pay to file their
returns.

125.   Plaintiff individually and on behalf of the Nationwide Class and California
Subclass seeks recovery for damages, equitable relief, and injunctive relief requiring Defendants
to comply with its contractual obligations.

**FIFTH COUNT**
**Fraud**
**(On Behalf of Plaintiff and the Nationwide Class against H&R Block)**

126.   Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as
if fully stated herein.

127.   Plaintiff brings this claim on behalf of herself and the members of the Classes.

128.   H&R Block, through its misrepresentations and omissions described above,
fraudulently induced Plaintiff and members of the Classes into purchasing its paid software
products by, *inter alia*, deceptively marketing the "Free Online" software, affirmatively
concealing and hiding its Free File software while simultaneously advertising its paid products as
"free," failing to alert Plaintiff and members of the Classes  that they were eligible for
completely free filing, and failing to provide a prominent link to its Free File software on its
website.

129.   The false and misleading representations and omissions were made with
knowledge of their falsehood.  H&R Block knew that the Free Online software would, in most

cases, require a paid upgrade. H&R Block also knew that consumers would mistake the Free Online Software with the Free File software, especially as H&R Block took affirmative steps to conceal the Free File software. H&R Block also intentionally acted to suppress access to its Free File software, and made Plaintiff and members of the Classes believe that the only option to file their taxes was through H&R Block's paid software.

130. The false and misleading representations and omissions were made by H&R Block, upon which Plaintiff and members of the proposed Nationwide Class and California Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Classes to purchase a paid version of H&R Block's tax-filing software, even though Plaintiff and members of the Classes were entitled to use the Free File software.

131. The fraudulent actions of H&R Block caused damage to Plaintiff and members of the proposed Nationwide Class and California Subclass, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Classes, that the Court enter judgment in her favor and against Defendants as follows:

A. An Order certifying the proposed Classes and appointing Plaintiff and her Counsel to represent the Classes;

B. An Order enjoining Defendants from engaging in the wrongful conduct alleged herein concerning the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices;

C. An Order compelling H&R Block to notify eligible taxpayers, provide a direct link on the H&R Block main website to properly advertise the Free File software to eligible participants, and fully reimburse and make whole Plaintiff and all members of the Classes for all costs paid to H&R Block;

D. An Order of disgorgement of wrongfully obtained profits;

E.  An award of compensatory, statutory, and punitive damages, in an amount to be determined;

F.  An award of reasonable attorneys' fees costs and litigation expenses, as allowable by law;

G.  A public injunction requiring H&R Block, on the home page of any competing "Free" service, on other webpages or screens throughout the process of using such service, and on any page that indicates that a taxpayer does not qualify for such competing "Free" service or proposes an upgrade or payment for H&R Block's paid products, (a) to provide a clear and prominent disclosure that H&R Block's competing "Free" service is not H&R Block's Free File software; (b) to clearly identify the differences between H&R Block's Free File software and its competing "Free Online" service; (c) to provide a prominent link to H&R Block's Free File software on its main website; (d) to unequivocally inform taxpayers at the earliest feasible point— including on the landing page for H&R Block's "Free Online" software and/or as soon as the taxpayer enters any response (such as the taxpayer's AGI) that is sufficient to determine the taxpayer's eligibility for the following services—whether they are eligible or ineligible for H&R Block's Free File software and whether they are eligible or ineligible for H&R Block's competing "Free Online" service; (e) to clearly and accurately inform taxpayers that any information they have provided to H&R Block and that would be used for competing "Free Online" software or for any paid H&R Block software will automatically and conveniently be transferred to H&R Block's Free File software if the taxpayer elects to proceed with its Free File software; and (f) to immediately transfer all relevant information a taxpayer has provided to H&R Block to its Free File software if the taxpayer elects to proceed with H&R Block's Free File software;

H.  Interest on all amounts awarded, as allowed by law; and

I.  Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable of right.


Dated:  September 26, 2019                    Respectfully submitted,


/s/ Eric D. Barton
**WAGSTAFF & CARTMELL LLP**
Eric D. Barton        MO # 53619
Sarah A. Ruane       MO # 59083
4740 Grand Ave., Ste. 300
Kansas City, MO  64112
Tel:  (816) 701-1100
Fax:  (816) 531-2372
ebarton@wcllp.com
sruane@wcllp.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (*pro hac vice* forthcoming)
Andrew Obergfell (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  ykopel@bursor.com

*Attorneys for Plaintiff*